STUART JAFFE *et al.*, Plaintiffs-Appellees, v. FLOYD FOGELSON, Defendant-Appellant.

First District (1st Division)   No. 82—1680

Opinion filed November 4, 1985.

William H. Theis, of Chicago, for appellant.

Defrees & Fiske, of Chicago, for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

Defendant, Floyd Fogelson, appeals from a summary judgment for $289,652.91 entered against him and in favor of plaintiffs, Stuart Jaffe and Michael Cooper.

Plaintiffs filed a verified five-count complaint against defendant and Hilltop Financial Services, Inc. Basically, the complaint alleges that plaintiffs and defendant were partners in Hilltop and that they guaranteed a note executed for the benefit of Hilltop. Count I sought $32,000 from Hilltop as reimbursement for money the plaintiffs paid as guarantors of the aforementioned note. Count II sought $66,000 from defendant toward the indebtedness of Hilltop based on defendant's 50% ownership of the stock of Hilltop. Count III sought an accounting of Hilltop's receipts and assets which defendant had allegedly converted. Count III sought unspecified compensatory damages and $50,000 in punitive damages from defendant. Count IV sought the liquidation of Hilltop. Count V sought statutory damages of $1,000 for each plaintiff because of defendant's alleged refusal to allow plaintiffs to examine Hilltop's records.

The trial court entered default judgment on count I against Hilltop and granted defendant's motion for an extension of time to file his answer. Apparently, defendant has never filed an answer to plaintiffs' complaint.

The trial court ordered defendant to appear for a deposition on September 17, 1981. He appeared but refused to answer any substantive questions claiming his right against self-incrimination. Defendant stated that there was a grand jury investigation into the matter.

On November 9, 1981, the trial court entered a "Protective Order" which stated that the deposition testimony of defendant could not be used in any other proceeding without order of the trial court. The court also ordered defendant to appear at another deposition. The deposition was eventually arranged for November 16, but defendant did not attend. The trial court again ordered defendant to submit to a deposition. The deposition was then set for December 18. Again, defendant refused to answer any substantive questions.

On February 2, 1982, plaintiffs filed a motion for summary judgment. Plaintiffs attached an affidavit executed by plaintiff Jaffe averring that "based on information available to him as of October 1979 when defendant, Fogelson, refused to account to plaintiffs regarding

Hilltop Financial Services, Inc., and further based on information that subsequently became available to him, he is informed and believes that defendant, Floyd Fogelson, has diverted assets, together with monies collected on accounts receivable from Hilltop to his own personal use and that the loss to plaintiffs is *no less than* $221,652.91." (Emphasis added.) On March 2, 1982, plaintiff Jaffe filed an additional affidavit stating that on February 28, 1980, and at other times, plaintiffs had made demands on defendant to inspect the records of Hilltop but that defendant had refused or ignored each demand. Defendant did not file a counteraffidavit.

In the judgment order the trial court found that defendant had "refused to obey the discovery rules of the Civil Practice Act and various orders of this court; *** pleadings, depositions and affidavits on file with this court establish that there is no genuine issue of fact and that this has not been controverted by any affidavit by defendant; therefore, plaintiffs are entitled to summary judgment as a matter of law." The court entered judgment for plaintiffs and against defendant for $289,652.91 and $2000 in attorney fees.

Defendant argues the summary judgment was improper because the affidavits submitted by plaintiffs were inadequate and/or that the summary judgment was an improper sanction against him for refusing to answer questions during his depositions.

■ Summary judgment is proper when "what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict ***." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497; *cf. Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Furthermore, the rules of the Illinois Supreme Court provide specific requirements for affidavits filed in such proceedings:

> "Affidavits in support of an in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." 87 Ill. 2d R. 191(a).

Assertions based on an affiant's information and belief are insufficient to sustain a summary judgment. (*Hedrick v. Goodwin Brothers, Inc.* (1975), 26 Ill. App. 3d 327, 325 N.E.2d 73.) Similarly, conclusory statements in affidavits without specific factual averments are insufficient to sustain summary judgment. *Kalb v. Village of Oak Lawn* (1984), 128 Ill. App. 3d 481, 470 N.E.2d 1268.

■ Specifically in *Standard Oil Co. v. Lachenmyer* (1972), 6 Ill. App. 3d 356, 285 N.E.2d 497, we held the affidavit was insufficient where the plaintiff stated that after all set-offs, "[*approximately*] $1,700.00, there is now due and owing from Defendant and to Plaintiffs, the sum of $9,498.25, ***." (Emphasis added.) (6 Ill. App. 3d 356, 359.) We held that the affidavit was insufficient because it clearly indicated that the affiant did not have personal knowledge of the exact set-offs to which defendants were entitled. Similarly, in the case at bar plaintiffs' affidavit, which states that to the best of the affiant's knowledge the defendant owes the plaintiffs "no less than $221,652.91" does not indicate personal factual knowledge but is conclusory and, thus, cannot sustain summary judgment.

■ The defendant also argues that the entry of summary judgment here was an impermissible sanction against defendant for his failure to comply with discovery. The trial court did not indicate that the summary judgment was imposed against defendant as a discovery sanction, and we will not assume that the judgment was intended as a sanction. However, we do note that if the order were imposed as a discovery sanction, that action would be improper under the present circumstances.

The rules of the supreme court grant discretion to the trial court to impose "just" sanctions to remedy violations of discovery. (87 Ill. 2d R. 219(d).) A "just" order under the rules means an order which provides for both the completion of discovery and trial on the merits. (*Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 436 N.E.2d 1068.) The goal of discovery sanctions is not to punish but rather to accomplish complete discovery. (*Bell v. Board of Education* (1978), 67 Ill. App. 3d 402, 385 N.E.2d 84.) The entry of default judgment for failure to comply with discovery should be imposed only as a last resort. *Stevens v. International Farm Systems, Inc.* (1978), 56 Ill. App. 3d 717, 327 N.E.2d 424.

Under our interpretation of the line of cases cited above, the trial court should normally impose a less severe sanction than summary judgment for failure to comply with discovery. Thereby, the court retains flexibility to impose progressively harsher sanctions to force compliance with discovery. The progression of the severity of discov-

ery sanctions has the effect of promoting both goals of encouraging complete discovery and hearing the merits of the litigation. The record gives no indication here that a less severe sanction was attempted or that it would have been fruitless.

For all these reasons, the judgment appealed from is reversed, and the case remanded for further proceedings.

Reversed.

BUCKLEY, P.J., and O'CONNOR, J., concur.